## National Building and Savings Association No. 2, Appellant, *v.* Cornelius H. Fink, John A. Born and Joseph Yetzer.

*Principal and surety—Building contract—Novation—Judgment—Opening judgment—Discharge of surety.*

On a proceeding to open a judgment entered upon a warrant of attorney accompanying a bond, it appeared that F., one of the defendants, had had a building contract with plaintiff, and that the other defendants had been his sureties in this contract. Before the building was completed it was ascertained that F. would be in default, and that liens would be entered. Upon the application of the sureties, plaintiff advanced the money to make good F.'s default, and the sureties on the building contract became the sureties upon the bond given to secure the advances. Subsequently judgment was entered upon the warrant accompanying the bond. The sureties claimed that misrepresentations had been made to them by the plaintiff to induce the execution of the bond ; that the plaintiff had failed to retain the ten per cent of sums due F. as the building progressed, under the terms of the building contract. One of the sureties also claimed that plaintiff had released the real estate of the other surety. It did not appear, however, what effect such a release had upon the other surety's ability to respond to the judgment. There was no sufficient evidence of misrepresentations by plaintiff. *Held*, (1) that it was too late, after the settlement of the building contract, to complain that the ten per cent had not been retained ; (2) that the case should be remitted to afford an opportunity to investigate and ascertain whether the value of the right of contribution against the surety released had been destroyed or seriously impaired.

Argued March 2, 1897. Appeal, No. 58, Jan. T., 1897, by plaintiff, from order of C. P. Berks Co., Feb. T., 1893, No. 125, opening judgment. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Rule to open judgment.

The facts appear by the opinion of ENDLICH, J., which was as follows :

On June 10, 1892, Fink contracted with plaintiff for the erection of a number of houses.   The price agreed upon was $11,990, to be paid as the work progressed, ten per cent, however, to be retained by the association until the whole contract was completed and releases of liens furnished.   Defendants Born and Yetzer guaranteed the faithful performance of the contract by Fink, agreeing to indemnify the association against liens for materials furnished and work done upon the houses to be erected by him.   Up to February 9, 1893, Fink had received from the association $11,784.22, and it was then ascertained that there were unpaid bills for labor and materials amounting to $5,755.59, for which liens might, and were proposed to, be filed against the houses.   On March 9, 1893, it was agreed that the association should pay these bills and that Fink should have time to reimburse the association, Born and Yetzer continuing their liability as sureties for him.   In pursuance of this arrangement, a judgment note for $5,755, payable with interest in two years, was executed by all of the defendants, upon which judgment was entered to the above number and term.   On July 9, 1895, Born presented his petition to this court praying that said judgment be opened, on the grounds (set forth in said petition and a supplemental one filed May 23, 1896), (1) that he was misled into signing the judgment note by the association's agent representing it to him as being simply an agreement to continue the liability of the sureties for Fink, its real character being discovered by him about three weeks after its execution ; (2) that the association had neglected to retain the ten per cent the contract with Fink required to be retained ; and (3) that, since the entry of the judgment, the association had, voluntarily and without consideration, released Yetzer's real estate (ample to satisfy his share of the joint liability) from the lien of the same.   Thereupon this rule was granted, in support of which depositions have been taken.

(1) The first allegation cannot be deemed established by them. What does appear to have taken place is this : the parties were notified by the association's agent of the outstanding bills, and

the fact that their holders threatened to lay liens, and told that the association was willing to give Fink time, if his sureties would continue their liability for him. There was some inconclusive talk about how Fink might be enabled to liquidate the amount in the course of a few years. The upshot was that the parties agreed to the extension. To consummate their agreement, the judgment note was given them to sign. It was not stated to be a judgment note, nor was it declared to be anything else. In fact, no questions were asked and no representations made beyond this, that, in order to secure the extension, it was necessary to sign the paper presented. The parties signed it without inquiring what it was or reading it. Ignorance of the contents of a paper, by reason of an omission to read it or have it read, induced by untrue representations concerning its character, etc., may be a ground of defense: McCormick v. Ins. Co. (Cal.), 24 Pac. R. 1003, but not in the absence of such circumstances: Schuylkill Co. v. Copley, 67 Pa. 386; Weller's App., 103 Pa. 594; Lett v. Kunkle & Wilson, 178 Pa. 273; 2 Whart. Ev., sec. 1243. There having been nothing in the statements of the association's agent to impose upon the petitioner, it is very clear that, if there was anything misleading in the previous conversation between him and Fink, when the latter first proposed the arrangement, that cannot avail as against the association; for a debtor is not his creditor's agent in procuring security: Harris v. Bradley, 7 Yerg. (Tenn.) 310; Campbell v. Murray, 62 Ga. 86; Helms v. Wayne Agr. Co., 73 Ind. 325. The conclusion that this first ground of the application is not made out is strengthened by a reference to the period suffered to elapse between the time when the petitioner first discovered, as he alleges, that he had signed a judgment note, and the time when he moved for relief—a period of over two years. It is an elementary rule that such applications must be made as promptly as is reasonably possible: 1 Black, Judg., sec. 313; and that, when they are not, the grounds upon which they are based must be very clearly established: Ansley v. Arnt, 3 Kulp, 152; Dynamite Co. v. Jones, 5 Kulp, 150.

(2) [The second allegation stands upon a different footing. The original contract contemplated the retention by the association of 10 per cent of the contract price to meet claims remaining unpaid by the contractor. As between his sureties and the

association it was the latter's duty to hold on to this fund, and its failure to do so would necessarily discharge the former pro tanto: Lloyd, Law of Bldg., sec. 69—upon the principle established in this state by a long line of decisions beginning with Com. v. Miller's Adm'rs, 8 S. & R. 452, that, where the creditor has the means of satisfaction in his hands and does not choose to retain it, but suffers it to pass into the hands of the principal, the surety is relieved. Now, it is very clear (as the facts are here presented) that what the parties to this judgment note were negotiating about, and what was finally agreed upon, was a continuation, in some form, of the liability of the sureties for unpaid bills, as, at the time, it existed under the original contract, not the assumption of a new and additional liability. Their existing liability in this respect, however, was for the excess of said bills over the percentage to be retained by the association and to be held by it available for such purpose. The surrender of this deposit, or any part of it, by the association to Fink could not make his sureties liable beyond their original undertaking. In fixing the amount of their liability, therefore, it was necessary to deduct from the total of the unpaid bills the amount, not only which had, but which, in accordance with the terms of the contract, ought to have been retained by the association. The sureties had the right to assume that the whole of it had been retained. The association knew that it had not been. When its agent informed the sureties that there were $5,755.59 demandable by it from them under their original assumption, they might well understand that that amount of bills was unpaid, in excess of the 10 per cent required by the contract to be retained by the association. If that was not true—if the sureties did not know that it was not true—and if the fact was suppressed to their disadvantage by one who had full knowledge of its existence, then a case would be presented of parties being induced to sign an obligation by an unfair misstatement of the actual condition of things, which they were not in a position to detect, and on the ground of which the court would interfere. It is not, however, assumed that there was any such actual fraudulent design in the premises. It is altogether likely that the legal consequences of the association's failure to retain the percentage called for by the contract were not thought of by the association's agent and that, therefore, the

fact that the liability of the sureties to the association was about $1,000 less than he stated was not present to his mind. If so, then the amount of this judgment was arrived at by a mutual mistake of fact, against which equity will relieve: Muhlenberg v. Henning, 116 Pa. 138, and the jurisdiction exercised by courts in the opening of judgments is essentially an equitable one: O'Hara v. Baum, 82 Pa. 416; Adams v. Grey, 154 Pa. 258; North & Co. v. Yorke, 174 Pa. 349. It may be added that, according to petitioner's testimony, the facts relating to this branch of his case were wholly unknown to him until quite recently. Nor, as alleged by him now, do they appear to be substantially controverted on behalf of the association.] [1]

(3) [Neither is there any doubt that the third allegation is true, at least to this extent that real estate of Yetzer, upon which this joint judgment was a lien, has been released by the association. The fact that he and Born were together sureties for Fink, with its legal and equitable consequences, was not changed by the confession and entry of the judgment; it was distinctly in continuation of their liability as such that the arrangement was made. A release of one cosurety discharges the other of so much of the joint liability as would have fallen to the share of the one released: Schock v. Miller, 10 Pa. 401; Klingensmith v. Klingensmith's Ex'r, 31 Pa. 460. The release of real estate covered by the lien of a judgment, being a surrender of the means of compelling payment, is prima facie, to the extent of the value of the lands released, a release of their owner: see Holt v. Bodey, 18 Pa. 207, and at the instance of the party alleged to be prejudiced thereby a ground for opening the judgment and awarding an issue to determine what is due upon the judgment from the remaining defendant: Kemmerer's App., 125 Pa. 283.] [2]

[It follows that, whilst the first ground laid by the petition is insufficiently supported and therefore to be eliminated, the question of the amount for which, by reason of the remaining matters alleged, the judgment shall be permitted to stand against the petitioner requires that he should be heard. To that extent, and with this limitation, the rule to show cause is made absolute.] [3]

*Errors assigned* were (1–3) portions of opinion as above quoting them; (4) order opening judgment.

*C. H. Ruhl,* of *Ermentrout & Ruhl,* with him *Felix P. Kremp* and *Edward S. Kremp,* for appellant.—An application to open a judgment entered upon a warrant of attorney or judgment note is an equitable proceeding, addressed to the discretion of the court; which discretion is very extensive, but it must rest on a foundation of competent evidence: Woods v. Irwin, 141 Pa. 293; Lomison v. Faust, 145 Pa. 8; English's App., 119 Pa. 533; Jenkintown Bank's App., 124 Pa. 337; Applebee's App., 126 Pa. 385; Weller's App., 103 Pa. 594; Johnston v. Patterson, 114 Pa. 398; Sylvius v. Kosek, 117 Pa. 67; County of Schuylkill v. Copley, 67 Pa. 386.

A judgment entered on warrant of attorney will not be opened to permit the defendant to set up a legal defense which has accrued to him since the entry of the judgment: Saunders's App., 19 W. N. C. 507.

*Jefferson Snyder,* with him *William J. Rourke* and *Philip S. Zieber,* for appellees, cited, Kelber v. Pittsburg N. Plow Co., 146 Pa. 485.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1897:

This appeal is from an order of the court below opening a judgment entered upon a warrant of attorney accompanying a bond. Fink, one of the defendants, was a builder who had entered into a contract with the plaintiff for the erection of several dwelling houses in the city of Reading. Born and Yetzer the other defendants had been his sureties for the performance of the building contract. When the houses were completed it was found that Fink had not applied all the money he had received upon the contract to the cost of building, and that he was indebted to workmen and materialmen in sums amounting together to about $5,000. His sureties, as the evidence shows, were disturbed about the situation. They found that mechanics' liens were about to be entered against the houses for the sums due from Fink, and they knew that they would thereupon become liable upon their undertaking as sureties for the default of their principal. The obvious way to relief was to secure a loan for Fink that would enable him to comply with his building contract, and that would give time in which to recover his losses and repay the loan. Negotiations were therefore entered

upon with the plaintiff and an arrangement made by the terms of which the association agreed to loan Fink $5,000 with which to free the building from lien or liability, upon his giving security for its repayment at the end of two years, and to provide him with further employment meantime. Born and Yetzer became his sureties upon the bond given for this money, and his building contract, upon which they had also been sureties, was complied with by the payment of the money upon the claims outstanding against the houses.

This was in a certain sense an extension of their original suretyship, but it was not literally such. The original contract having been fully complied with by means of the money borrowed, the bond given for the money was a novation. This judgment was entered on the bond. When it fell due according to its terms Fink had paid nothing upon it, and proceedings were instituted for its collection. The application to open judgment, now before us, was then made by the sureties in July, 1895. It was based upon three several allegations of fact: first, fraudulent representations made by Fink and plaintiff's officers to induce the execution of the bond; second, the failure of the plaintiff to retain from Fink, pending the building contract, ten per cent of the sums due to him as the work progressed in accordance with the terms of the contract; third, the allegation by Born that the plaintiff had released the real estate of Yetzer from the lien of the judgment whereby his right to contribution from Yetzer was defeated. After a full hearing upon the rule to show cause, the learned judge of the court below decided against the sureties upon the first of these questions, holding that neither by Fink, nor by the plaintiff, had they been misled in any particular. The second point turned out to be equally unfounded. The building contract had been finally settled with the knowledge and active co-operation of the sureties and the new bond given without objection on their part as to its amount or the application of the money obtained upon it. The time to have raised this question was at the settlement of the building contract. It could not be properly raised when the bond given to secure the borrowed money was payable. The relation of owner and contractor closed when the building contract was finally settled. The relation created by the bond was that of lender and borrower, and no reason is dis-

closed by the evidence for relieving the borrower from the payment of the entire sum borrowed. The third reason is stated in an indefinite manner. The facts upon which injury to Born is alleged are not given. What real estate was released, and when, and how such release affected the right of contribution of the other surety, or the ability of Yetzer to respond to the plaintiff's judgment does not appear. The order of the court below seems to us therefore to have been wisely made upon the showing then before it; but because of the uncertainty relating to the alleged releases, we are of the opinion that further opportunity might well be given to Born to show the exact facts in regard to the releases alleged to have been given to Yetzer. The order of the court below is reversed except as to the complaint made by Born about the release of Yetzer from the lien of this judgment. The record will be remitted to afford opportunity to investigate this single question, and ascertain whether the value of the right of contribution against Yetzer has been destroyed or seriously impaired, and if so, the court will make such order for the relief of Born, as the circumstances may require.