## Bell, Secretary of Banking, v. Sundheim

*George J. Mallen* and *J. Hibbs Buckman*, for plaintiff.
*Morton P. Rome*, for defendant.

ALESSANDRONI, J., January 27, 1941.—This is an action in assumpsit to recover the sum of $301,606.80 on a contract of warranty and suretyship executed by defenddant, Harry G. Sundheim, Clarence Marks, Albert M. Greenfield, and John F. Sherman, on December 1, 1928. By the terms of the agreement, defendant and his co-sureties became jointly and severally obligated to the Franklin Trust Company, of which plaintiff is the successor, for any loans or credits which the said bank had made or in the future would make to the Bankers Realty & Holding Company. The aggregate amount of liability was not to exceed the sum of $350,000.

The statement of claim avers that various loans were made to the Bankers Realty & Holding Company as a result of which there remains unpaid the amount in litigation with interest thereon from December 30, 1931.

In his affidavit of defense, defendant admitted the facts averred in the statement of claim but set forth that John F. Sherman was a co-surety on the contract in suit. By way of new matter and set-off, the following facts are set forth: On October 20, 1934, the Secretary of Banking, with the consent of the court, concluded a settlement with the executors of the estate of John F. Sherman of the liability which Sherman assumed as a party to this suretyship agreement, and in consideration of the sum of $10,000 his estate was released and discharged from

any liability on the contract. It is contended that, by reason of this release and discharge, defendant was discharged from any liability as to one fourth of the total indebtedness.

It is also alleged that on May 2, 1934, the Secretary of Banking received the sum of $12,500 from the executors of the estate of Horace Hano and Bertie I. Hano on account of the balance due on the indebtedness for which defendant was surety. This payment was credited by the Secretary of Banking in reduction of the interest due on the principal obligation. Defendant contends that this application was erroneous.

It is also averred that, in signing the suretyship contract, defendant was acting for and on behalf of an investment syndicate known as Sundheim, Fultz & Kun and that plaintiff, on June 8, 1940, in C. P. No. 6, June term, 1940, no. 930, instituted an action against defendant and others on another contract of suretyship to recover the same balance due upon which the present action is based. This latter averment is offered as a defense to the entire claim, for defendant prays that this suit be abated lest defendant be subjected to double liability. This contention is without merit. In the first place the parties to that agreement are not identical. Secondly, that agreement was executed on October 20, 1924, whereas the contract which forms the basis of the present action was executed on December 1, 1928. In addition to the difference in parties and instruments, it is specifically provided in the contract of suretyship upon which this action is predicated that "this contract of suretyship shall be in addition to and not in substitution of any and all agreements of suretyship heretofore made by any of the undersigned jointly or severally."

The questions involved in the partial defenses are, however, of greater complexity. In plaintiff's rule for judgment for want of sufficient affidavit of defense and his reply raising questions of law to the new matter and set-off, it is denied that the release by an obligee and the

discharge of one of four co-sureties from all liability under a joint and several suretyship contract entitles the unreleased and undischarged co-surety to a credit against his liability for the proportionate share of the released co-surety. It is contended that only the amount actually paid is to be applied in reduction of the indebtedness.

The kernel of this contention is the distinction between joint liability and joint and several liability. It is conceded that defendant would be entitled to such a reduction had his liability been only joint in character under the terms of the Act of March 22, 1862, P. L. 167, 59 PS §131, but that the liability of defendant rises higher by reason of the accompanying several liability.

It appears that, at common law, not only were all joint debtors discharged by a release of one of them, but all those jointly and severally liable as well. Early decisions have also held that the several liability as well as the joint liability of all the debtors was discharged. A technically satisfactory reason for such a rule is not easy to find. See 2 Williston on Contracts (rev. ed.) sec. 334. It is apparent, however, that joint liability and joint and several liability were considered the same insofar as releases were concerned. Where, however, a technical release was not given, but a payment on account of the indebtedness was made by one of the joint or joint and several debtors, the discharge as to the remaining debtors was limited to the extent of the payment. Section 123 of the A. L. I. Restatement of Contracts provides that, where the obligee of a joint and several contract discharges the promisor by release, the other promisors are thereby discharged from the joint duty but not from their several duties except in the cases and to the extent required by the law of suretyship. This constitutes the view of the modern authorities.

The Restatement of Contracts further provides in §120 that partial performance of a contractual duty by one who is severally, jointly, or jointly and severally bound for that performance terminates, to the extent of the per-

formance received, the right of the person receiving it to enforce for his own benefit the promises of the other promisors. It would appear, therefore, that the effect of partial performance or release is the same regardless of whether the obligation assumed is merely joint or joint and several. It might, therefore, be argued that the Act of 1862, supra, should be interpreted to include joint and several obligors within its scope. Such a decision is unnecessary, since this action is upon a contract of suretyship and defendant is sued as one of four co-sureties and not as a principal debtor. Each of several co-sureties is, in legal effect as against the others, a principal for his proportion of the debt and a surety as to the balance. A release of one is therefore a release of one who is in part a principal, so that a release by a creditor of one co-surety discharges the others in respect to the portion of the debt to which the party released is a principal. See Williston on Contracts, sec. 1263.

An examination of the decided cases in this jurisdiction supports this theory. In Mortland v. Himes, 8 Pa. 265, the question was whether a release of a surety operated also as a release of the principal obligor. In rejecting this contention, the court stated (p. 268) :

"The principle is familiar, that a release of one of two or more joint, or joint and several debtors, will operate to release all the others from the obligation of the debt . . . but a release of one co-surety will exonerate the other only to the extent to which the releasee would otherwise have been compellable to pay. The creditor may recover against the other co-sureties, but not more than the proportion they would have paid supposing the co-surety released had contributed his share: Ex parte Gifford, 6 Ves. jun. 805."

The dictum in Mortland v. Himes, supra, was adopted in the leading case of Schock v. Miller, 10 Pa. 401. There, a creditor released one of two co-sureties from all liability on a joint and several obligation upon the receipt of one half of the amount due. It was urged that the release

constituted a discharge of all sureties from any obligation. This contention was rejected and it was held that the release conferred only a partial defense. The court stated (pp. 402-403):

"Where the effect is to increase the responsibility of those who are not included in its terms, the release of one or more joint, or joint and several debtors, operates as a discharge of all the others from the obligation of the debts. But, when the effect will be, not to increase the responsibility of the other obligors, it operates as a release *pro tanto* only."

It is contended by plaintiff that the phase "pro tanto" means the actual amount received. In view of the later expressions in the opinion we cannot accept this interpretation. The court continued in the following language:

"Thus, the release of a principal debtor will discharge a mere surety, but the release of one co-surety will exonerate the other only to the extent which the releasee would otherwise be compelled to pay. . . . Whatever, then, may be the effect of a release at law, it, in equity (and equity is part of our law), is a discharge *pro tanto* . . . . In this case it is clear, that the act of the creditor, so far from being an injury, is a benefit to the co-surety, for it relieves him from the payment of a moiety of the debt, the whole of which he might otherwise be compelled to pay."

It is clear that the court ruled that the unreleased surety was entitled to a proportionate reduction in the debt, rather than a reduction limited to the sum actually paid on account.

This decision was followed in the case of Klingensmith v. Klingensmith's Exec., 31 Pa. 460. In that case one of two co-sureties on a joint and several obligation had been discharged by the neglect of plaintiff to sue the principal after due notice. The court held that this did not discharge both, as defendant contended, where a several action could be brought, but that under the authority of Schock v. Miller, supra, the unreleased surety could not

be sued for more than his proportion of the total indebtedness. See also Burke et al. v. Noble, 48 Pa. 168.

In the case of Wharton v. Duncan, 83 Pa. 40, the court said (p. 44):

"A creditor may release, or compound with, or give time to one co-surety without prejudicing his right to proceed against the others; but he cannot recover from the other co-sureties more than the proportion they would have paid, supposing the co-surety released had contributed his share: [cases cited]."

See also Greenwald & Co. v. Kaster, 86 Pa. 45, and National Building & Savings Assn. (No. 2) v. Fink et al., 182 Pa. 52.

The release and discharge of John F. Sherman, one of the four co-sureties under the joint and several suretyship contract, therefore, entitled defendant, an unreleased co-surety, to a credit against his liability for Sherman's proportionate share of the obligation as of October 24, 1934, the date of the release.

A most interesting question is presented in determining the manner in which this credit is to be applied in reduction of the indebtedness. The painstaking research of counsel and our own study have failed to reveal any authority dealing with this question. If the credit is applied to unpaid principal, that method of calculation would be most beneficial to defendant surety. If the credit is applied to unpaid interest, it would be most beneficial to the creditor. In the first case, the balance of the principal indebtedness upon which interest charges are calculated would be reduced in the greater amount. Counsel for defendant, to whom we are indebted for an able brief, suggests a "difference-splitting" method by which the credit is given to unpaid principal and to unpaid interest in the same proportion as the share of the released co-surety (principal and interest separately) bore to the total obligation (principal and interest separately). As authority for the adoption of this method of calculation there are three fundamental principles.

The rule which, in the absence of appropriation by the debtor, appropriates payments in the way most advantageous to the creditor, will not be applied to the prejudice of a surety: Hollister v. Davis et al., 54 Pa. 508; Risher et al. v. Risher et al., 194 Pa. 164. Second, one of the inherent equities growing out of the suretyship relation is the application of the maxim "equality is equity." Third, a surety is favored by the law: Young v. American Bonding Co. of Baltimore, 228 Pa. 373, 380; Thommen v. Aldine Trust Co. et al., 302 Pa. 409, 418.

The principle that money paid on a debt in the absence of a direction by the debtor should be applied first in discharge of interest and then in the extinguishment of the principal (Bower v. Walker, 220 Pa. 294) is inapplicable under the facts of this case, since the credit to which defendant is entitled arose by operation of law as a result of the release of Sherman, and by reason thereof defendant and the other unreleased co-sureties had no opportunity or notice to direct the form of its application. For obvious reasons Sherman or his executors had no interest in doing so. We adopt this median possibility since it appears to us to be the most fair and equitable balance between the contesting interests.

It has been agreed by counsel that the sum received by the creditor of the settlement with the executors of the estate of Horace Hano and with Bertie I. Hano has been credited on account of the arrears in interest. Each of these parties was obligated on suretyship contracts independent of the one that forms the basis of this suit, but which were also given as security for the same indebtedness for which the present suretyship contract was executed. A payment made by one debtor inures to the benefit of the co-debtors: Goldbeck v. Kensington National Bank, 147 Pa. 267. Defendant is, therefore, entitled to a credit for the amount paid by three persons in reduction of his suretyship liability. Again the question arises, however, how should this credit be apportioned between interest and principal? Having ascer-

tained the share of each of the released sureties in the total obligation, the amount paid can be allocated readily to each of the sureties released. The proportion that the principal liability of each bears to the total liability of each represents the portion of the consideration paid to release principal liability. In like manner, the proportion that the interest liability bears to the total liability of each represents the portion of the consideration paid to release the interest liability. In crediting the consideration paid for the release in reduction of defendant's liability, that part paid to release interest liability should be deducted from unpaid interest and the portion paid to release principal liability should be deducted from unpaid principal.

The principle for guiding such apportionment may be stated as follows: The consideration paid for the release and discharge of two several sureties of all liability on independent surety contracts is to be credited in reduction of liability for unpaid principal and unpaid interest of an unreleased surety bound by a separate obligation for the same debt in the same proportion as the share of each of the released sureties (principal and interest separately) bore to the total obligation of each.

This method follows the theory of application adopted in the credit given on account of the release of the estate of John F. Sherman and strikes a fair and equitable balance between the type of credit which on the one hand would be most beneficial to defendant surety, and which on the other would be most beneficial to plaintiff creditor.

For these reasons and to the extent indicated, we believe that the affidavit of defense, the new matter and set-off are not insufficient in law.

### Order

And now, to wit January 27, 1941, plaintiff's rule for judgment for want of sufficient affidavit of defense and plaintiff's reply to new matter and set-off raising questions of law are discharged.