Freeman, Secretary of Banking, Appellant, *v.* Sundheim.

Argued November 23, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Joseph J. Cohen,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellant.

*Samuel D. Goodis,* with him *Allen J. Levin,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1944:

This is a suit by the Receiver of Franklin Trust Company, of Philadelphia, against Harry G. Sundheim on a written contract of co-suretyship executed by Sundheim, John F. Sherman, Clarence L. Marks and A. M. Greenfield to secure the trust company for loans to Bankers Realty and Holding Company. Sundheim filed an affidavit of defense, defending, as to one-fourth of the claim, that plaintiff had released one of the four co-sureties and thereby had reduced defendant's liability to three-fourths of the claim. Plaintiff moved for judgment for want of a sufficient affidavit of defense, but his motion was refused.* The next step in the proceeding is described in appellant's History of the Case as follows: "By stipulation of counsel, approved by the Court, judgment was entered on March 18, 1941, in favor of the plaintiff and against the defendant, Harry G. Sundheim, in the amount of $332,122.81, which amount represented three-fourths of the principal and interest of plaintiff's claim against defendant at March 18, 1941, and plaintiff was given leave to file a reply to new matter and set off on the merits as to the balance." The case was then tried without a jury and the court found for the defendant as to the balance for which judgment had not been entered pursuant to the stipulation.

The Receiver appeals. He contends that, as the co-sureties were bound jointly and severally to pay the entire indebtedness, he is entitled to judgment against

---

* The opinion of the court dismissing the motion is reported in 40 D. & C. 380.

the defendant for the entire balance due at the time of the settlement less $10,000 received from the released co-surety. The defendant contends that he was prejudiced by the bank's release of one of the four co-sureties and is therefore entitled to a deduction of one-fourth of the balance due.

Sherman, one of the co-sureties, died insolvent, domiciled in Massachusetts. The plaintiff Receiver agreed with Sherman's executors to accept from them $10,000 in discharge of Sherman's obligation of the co-suretyship agreement. The court having charge of the liquidation approved the settlement on the Receiver's petition.

The question is: To what extent has defendant's liability, as co-surety, been reduced by the settlement with Sherman's executors? Does the release reduce the total liability by $10,000, or does it reduce the liability by one-fourth, as was held below?

The learned court applied a principle stated in *Mortland v. Himes,* 8 Pa. 265, 268, and repeated in subsequent cases, to the effect that ". . . a release of one co-surety will exonerate the other only to the extent to which the releasee would otherwise have been compellable to pay. The creditor may recover against the other co-sureties, but not more than the proportion they would have paid supposing the co-surety released had contributed his share." It does not appear that the court in those cases dealt with the release of an insolvent co-surety. Sherman's insolvency is the fact of distinguishing and controlling importance; in addition, he died a nonresident of this Commonwealth. The effect of a co-surety's insolvency was noticed in *Commonwealth v. Cox's Administrator,* 36 Pa. 442, 444, an action of debt on an administrator's bond, in which the court, dealing with five co-sureties, observed that "It follows further, that, as none of the sureties appear in the case stated to be insolvent, each is bound for one-fifth." The rule was applied in *Hoff v. Kauffman,* 282 Pa. 471, 475, 128 A. 120. Compare *Reber's Estate,* 15 Pa. Superior Ct. 122, 128.

Section 134 of the Restatement, Security, states the rule to be: "Where a surety is discharged in bankruptcy or the creditor's claim against him becomes otherwise unenforceable by operation of law, the cosureties remain liable to the creditor." Section 135, paragraph 1, provides: "Subject to the rule stated in Subsection (2), where the creditor releases one of several cosureties, the obligations of the remaining sureties to the creditor are reduced to the extent that upon performance of their obligations the released surety could have been compelled to make contribution." Section 154 (2) provides: "Where a surety is entitled to contribution, and contribution cannot be had from one or more of the cosureties because of insolvency, non-residence, or other circumstances, each of the remaining cosureties must contribute a proportionate amount of the loss so caused." See comment h, page 436. Defendant cannot recover in contribution from Sherman's estate for two reasons: (1) because it is insolvent; (2) because suit cannot be brought in this jurisdiction. The cases on the subject are collected in notes 6 and 7 to section 1277, Williston on Contracts, Vol. IV, p. 3645 (rev. ed., 1936). Contribution rests on the ancient maxim, "equality is equity." If defendant pays the judgment for the entire balance due, he will become entitled to contribution from the solvent co-sureties suable here. To obtain the equality required by equitable principles, the amount contributable by the remaining co-sureties will be increased by the sum for which the insolvent co-surety was liable but which cannot be collected from him. The release of Sherman's executors deprived defendant of nothing as the authorities referred to above show; on the contrary, he and the remaining co-sureties benefitted in the sum of $10,000 by the reduction of the debt for which they jointly and severally had agreed to pay.

The judgment is reversed and the record is remitted for the entry of judgment for the balance due with interest.