In re Edward R. BRUECKNER and Dorothy M. Brueckner, Debtors.

Mark L. GLOSSER, Trustee, Plaintiff,

v.

David P. BEBOUT and Jacqueline A. Bebout, Defendants.

Bankruptcy No. 90–3485–BM.

Adv. No. 92–0169–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 13, 1992.

Steven T. Shreve, Stone, Glosser & Stone, Pittsburgh, Pa., for plaintiff/trustee.

William R. Haushal ter, Rosenberg, Kirshner, P.A., Pittsburgh, Pa., for defendants/debtors.

MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 Trustee ("trustee"), has paid the sum of $42,395.27 from estate assets to satisfy a debt owed to Equibank which debtors and defendants had guaranteed. The trustee maintains that he is entitled to recover from defendants one-half of the amount paid to Equibank because they were co-obligors with respect to the debt.

Defendants admit that they, along with debtors, guaranteed the obligation in question but insist that debtors orally agreed that they (i.e., debtors) would be the primary obligors and that defendants would not be liable to debtors for contribution.

For reasons set forth below, judgment will be entered in favor of the trustee and against defendants in the amount of $21,-197.64.

I

FACTS

Wellington Service, Inc. ("Wellington") was incorporated in August of 1984 by debtor Edward Brueckner and defendant David Bebout. Its major asset was a service station located at 525 Perry Highway, Pittsburgh, Pennsylvania. They incorporated Wellington with the expectation of eventually making a profit from it.

Mr. Brueckner and Mr. Bebout each owned fifty percent (50%) of Wellington's shares. Mr. Brueckner served as President of Wellington. Mr. Bebout served as its Vice–President and Secretary.

Both were experienced businessmen prior to the formation of Wellington. Mr. Bebout was a principal in several other successful business ventures, including an equipment leasing venture. Mr. Brueckner owned a body repair shop and also worked for Mr. Bebout in connection with the equipment leasing business.

The service station was a going concern which was purchased from its previous owner. Wellington applied to several lend-

ing institutions in order to finance the purchasing of the service station.

On August 28, 1984, Equibank approved a term loan to Wellington. Equibank required as security for the loan that debtors and the Bebouts grant it mortgages against their personal residences and that they personally guarantee payment of Wellington's obligation.

On September 30, 1984, Wellington executed a promissory note payable to Equibank in the principal amount of $73,750.00 and a security agreement which granted Equibank a security interest in all of its equipment, inventory, and accounts receivable. Equibank in turn loaned $73,500.00 to Wellington, which it then utilized to purchase the service station.

Also on September 30, 1984, debtors granted Equibank a mortgage against their personal residence and executed a document wherein they personally guaranteed payment of Wellington's obligation to Equibank.

That same day, defendants also granted to Equibank a mortgage against their personal residence and executed a document wherein they personally guaranteed payment of Wellington's obligation to Equibank. The latter document was identical in all relevant respects to the one executed by debtors.

Mr. Brueckner worked at the service station after it was purchased by Wellington and was in charge of its daily operations.

When the service station turned out not to be profitable, Wellington defaulted on its obligations on the promissory note it had executed on September 30, 1984. In order to minimize its losses, Wellington located a buyer who agreed to purchase its assets for $31,000.00.

On May 13, 1986, Wellington, Equibank, debtors in their individual capacities, and defendants in their individual capacities executed an agreement which facilitated the sale of the service station.

Wellington "reconfirmed" and "ratified" the note and the security agreement it had executed on September 30, 1984 and "con-

firmed" that they "continued in full force and effect" at all times subsequent thereto.

Debtors and defendants "reconfirmed" and "ratified" the mortgages and guarantees they had executed on September 30, 1984 and "confirmed" that they "continued in full force and effect" at all times subsequent thereto.

Equibank consented to the sale of Wellington's assets on the condition that the sale proceeds, in the minimum amount of $31,000.00, be paid to it and agreed to release its security interest in those assets upon its receipt of the proceeds.

Debtors agreed to execute a promissory note in favor of Equibank in the amount of $37,483.11 and agreed to grant it an additional mortgage against their personal residence. They further acknowledged that the note they were to execute was given pursuant to the guarantee they had executed on September 30, 1984 and was not in replacement of the note executed by Wellington on that date. Equibank in turn agreed that it would not seek to collect on the Wellington note as long as payment was made on the note debtors were to execute.

Defendants agreed to guarantee payment of the note debtors were to execute and agreed to grant Equibank an additional mortgage against their personal residence.

Finally, debtors and defendants acknowledged that they were not released from the guarantees and mortgages previously executed by them and "ratified" their liability to Equibank as sureties under the various guarantees.

The proceeds from the sale of Wellington's assets were paid to Equibank in accordance with the agreement of May 13, 1986.

Payments were made for a time on the promissory note which debtors executed in accordance with the provisions of that agreement. Some of the payments were made by Mr. Brueckner. Other payments on the note were made by Mr. Bebout.

Debtors eventually defaulted on the promissory note they had executed, whereupon Equibank moved to assert its rights

and remedies and enforced its mortgages against debtors' residence.

On November 6, 1990, debtors filed a joint voluntary chapter 7 petition. Schedule A–2, Creditors Holding Security, listed a secured debt in the approximate amount of $35,000.00 which arose out of the two mortgages they had granted to Equibank.

A chapter 7 trustee was appointed on November 7, 1990. On December 21, 1990, the trustee filed a motion to sell debtors' residence free and clear of all liens and encumbrances.

On January 2, 1991, Equibank filed a proof of claim in the amount of $40,678.82 which was based on the mortgage and the note executed by debtors in May of 1986.

An order was entered by the court on January 22, 1991 approving sale of debtors' residence free and clear of all liens and encumbrances for the sum of $65,900.00. The trustee was directed to pay, at the closing, the balance due on the first mortgage on the property which debtors had executed on September 30, 1984.

The closing on the sale of debtors' residence was conducted on February 8, 1991. Pursuant to the order of January 22, 1991, the trustee paid the sum of $42,385.27 to Equibank, whereupon it executed and delivered to the trustee a satisfaction piece with respect to the mortgaged premises.

On April 1, 1992, the trustee brought the adversary proceeding which is now before the court. Trial was conducted on October 26, 1992, at which time the parties were permitted to present whatever evidence they deemed appropriate.

## II

## ANALYSIS

■ The controlling law in this case is relatively simple and straight-forward and is of ancient vintage. A guarantor who has paid the full amount of a debt which also was guaranteed by another may obtain from the co-guarantor an amount sufficient to make the payment of both on the debt equal. See Hoff v. Kauffman, 282 Pa. 471, 475–76, 128 A. 120, 121 (1925).

■ Defendants admit that they, along with debtors, executed a guarantee on September 30, 1984 to pay the debt owed to Equibank by Wellington but have raised an affirmative defense to the trustee's action against them. Defendants maintain that they executed the guarantee only because of friendship and affection that Mr. Bebout had for Mr. Brueckner. According to defendants, they and debtors orally agreed shortly after the guarantees were executed in September of 1984 that debtors would be primarily responsible for Wellington's debt and that debtors would not seek contribution from defendants in the event debtors were required to satisfy Wellington's debt.

The evidence presented at trial compels the conclusion that no such oral agreement was ever reached.

Mr. Bebout was an experienced and sophisticated businessman and a principal in several other successful ventures when the alleged oral agreement was reached. It defies belief that an experienced, sophisticated businessman would have relied upon an oral agreement to that effect. Defendants produced no documentary evidence to support this position.

Defendants' contention also is implausible in light of their conduct subsequent to the alleged oral agreement. It is unlikely that defendants would have executed the agreement of May 15, 1986 had such an oral agreement been reached. Also, it is unlikely that defendants would have made some of the payments on the promissory note executed by debtors on May 13, 1986 unless they understood that debtors could and would seek contribution from them in the event debtors were called upon to satisfy Wellington's obligation to Equibank.

Defendants' insistence that they engaged in such conduct only because of the friendship and affection Mr. Bebout had for Mr. Brueckner strains at credulity. Defendants' reasons for so acting were not as philadelphian and altruistic as they would have one believe. As has been noted, Mr. Brueckner and Mr. Bebout incorporated Wellington in hopes that they would realize a profit from so doing. In order to achieve this objective, debtors and defendants were

required by Equibank to personally assume the risk of liability should the venture fail. Mr. Bebout, a sophisticated businessman, understood this and elected to assume that risk and executed the guarantee which underlies the present action.

The amount paid out of estate funds to satisfy the obligation to Equibank was $42,395.27. The trustee is entitled to contribution from defendants in the amount of $21,197.64, or one-half of the amount paid to Equibank. *See Hoff v. Kauffman*, 282 Pa. at 475–76, 128 A. at 121.

An appropriate order shall be issued.