Commonwealth ex rel. Schnader, Attorney-General, *v.* National Surety Company et al., Appellants.

Argued April 10, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* and *Braddock & Sohn,* for appellant.

*C. Russell Phillips,* with him *Montgomery, Mc-Cracken, Walker & Rhoads,* and *Alfred C. Bennett,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1944:

The problem in this case, though superficially complicated, readily lends itself to solution by the application of well-recognized equitable principles.

On February 28, 1933, Commercial National Bank of Philadelphia placed itself on a limited withdrawal basis

and refused to honor the checks of its depositors; thereupon a Receiver was appointed to liquidate its affairs. Among the depositors were receivers and trustees in various bankruptcy proceedings who had on deposit in the bank sums totaling approximately $100,000.[1] These funds were protected by two surety bonds executed in pursuance of the Bankruptcy Act of July 1, 1898, Ch. 541, sec. 61, 11 U. S. C. A. §101,—one of Maryland Casualty Company in the sum of $25,000 and the other of National Surety Company in the sum of $75,000.

On April 29, 1933, the Superintendent of Insurance of the State of New York was directed by the Supreme Court of New York County to take possession of the business and property of National Surety Company for the purpose of rehabilitation; immediately following this action the Insurance Commissioner of Pennsylvania was appointed by the Court of Common Pleas of Dauphin County as Ancillary Receiver of the Company in Pennsylvania. On June 1, 1934, the New York Court directed the Superintendent of Insurance of New York to liquidate the Company's assets; it was ordered that all claims should be filed with the Liquidator on or before April 1, 1935. On October 31, 1934, an agreement was entered into between the Liquidator and the Ancillary Receiver in Pennsylvania, approved by the New York Court and the Dauphin County Court, which provided that Pennsylvania claimants against National Surety Company might file their claims with either the Ancillary Receiver or the Liquidator as the claimant might elect, all such claims to be filed on or before April 1, 1935; if filed with the Ancillary Receiver they were to be forwarded to the Liquidator who was thereupon to notify the Ancillary Receiver whether the claim was disputed; if it was disputed the claimant was to have the right to have it determined by the Pennsylvania courts and such determination was to be deemed valid in the New York pro-

---

[1] In most instances the amounts stated in this opinion are intended merely as approximations.

ceedings as though it had been duly adjudicated by the courts of that State; actual distribution, however, was to be made by the Liquidator.

On March 14, 1934, Maryland Casualty Company paid to the Clerk of the United States District Court for the Eastern District of Pennsylvania the sum of $25,000, which was the full obligation under its bond, whereupon, on March 27, 1934, that court made an order that when the Clerk should have received from National Surety Company and Commercial National Bank sums which, with the $25,000 paid by Maryland Casualty Company, equalled the total of all bankruptcy deposits in the bank, dividends received thereafter from the bank should be paid by the Clerk of the Court to Maryland Casualty Company, subject to all rights of National Surety Company therein by virtue of any payments it might make on account of the liability under its bond.

On January 16, 1935, a first dividend of 20% was declared by the Receiver of the bank and was paid in installments during that year.

The United States District Court appointed J. Howard Reber, Esq., as Amicus Curiæ in connection with the collection of the bankruptcy deposits in the bank, and on February 18, 1935, authorized him to file a proof of claim against National Surety Company for and on behalf of all the receivers and trustees in bankruptcy who had deposits in the bank; it was ordered that any dividends received from National Surety Company should be paid to the Clerk of the Court and when he should have in his possession enough moneys received from Maryland Casualty Company, dividends from the bank, and dividends from National Surety Company, to equal the amount of the bankruptcy deposits, the bankruptcy depositors were to assign to Maryland Casualty Company and National Surety Company, as their respective rights and interest might appear, all remaining dividends which the depositors might receive from the bank.

In accordance with the authority thus given the Amicus Curiæ, on February 25, 1935, filed a claim with the New York Liquidator for $100,000; (admittedly the claim could not in any event have been greater than $75,000). At that time the only amount which had been actually received by the Clerk of the Court, in addition to the $25,000 from Maryland Casualty Company, was a dividend payment from the Receiver of the bank of approximately 2.6% ($2,600), made on January 16, 1935, but by subsequent payments during that same year and further dividends paid from 1937 to 1942 there were received dividends aggregating 50%; a final dividend of 6.9% in 1943 brought the total of such payments on the claims of the bankruptcy depositors to approximately $57,000, so that the liability on the two surety bonds which secured those deposits was ultimately reduced to about $43,000.

The Liquidator rejected the claim filed by the Amicus Curiæ; thereupon the latter elected to present it to the Ancillary Receiver in Pennsylvania, who recommended to the Dauphin County Court that it be not allowed; upon exceptions being filed to his report the Dauphin County Court referred the claim back to the Ancillary Receiver, or his Deputy in charge of the liquidation, for consideration and report on the exceptions. A hearing was accordingly held before the Special Deputy Insurance Commissioner, who, on March 30, 1942, filed a report recommending to the court that the claim be allowed in the full amount of $75,000 notwithstanding the previous receipt of the dividends from the Receiver of the bank, but without prejudice to the right of the Liquidator to cease paying dividends on the claim when .the claimant should have received from all sources the sum of $100,000, and without prejudice also to the rights of Maryland Casualty Company against National Surety Company arising from the payment by the former of the entire amount of the obligation under its bond; thus the

Commissioner did not express any opinion concerning those respective rights. But on February 21, 1942, a month before this report was filed, the Liquidator had paid to the Clerk of the United States District Court the sum of $25,000, which, by order of that court of April 8, 1942, the Clerk was authorized to accept and to receipt for without prejudice to the rights of the Clerk and the Amicus Curiæ against the Liquidator, and without prejudice also to any vested rights of subrogation of Maryland Casualty Company in dividends paid by the Receiver of the bank; it was further ordered that the Clerk and the Amicus Curiæ [2] should assign to Maryland Casualty Company any unpaid balance of their claim in the liquidation proceedings, subject to any rights therein of the Liquidator by reason of payments made on account of the liability of National Surety Company on its bond. Such a receipt was executed by the Clerk and by the Amicus Curiæ and they assigned their claim to Maryland Casualty Company in accordance with the order of the court.

The Liquidator paid, during 1938, 1939 and 1940, dividends totaling 50% on the claims against National Surety Company, but no such payments were made on the claim of the Clerk; if they had been he would have received up to $37,500 on account of his claim instead of the $25,000 actually paid by the Liquidator. Contending that the claim had been fully discharged by that payment, the Liquidator filed objections with the Dauphin County Court to the report of the Special Deputy Insurance Commissioner; those objections were sustained by the court and the claim was disallowed. The present appeal is by the Clerk and the Amicus Curiæ to the use of Maryland Casualty Company, but it is obvious that the legal appellants, as distinguished from the equitable appellant, have no interest in the outcome.

---

[2] The claim was properly that of the Clerk; the Amicus Curiæ acted merely to collect it.

From the recital thus made of the transactions involved in this litigation there emerges the outstanding fact that Maryland Casualty Company paid on its bond more than it owed and National Surety Company paid on *its* bond less than it owed. Since the net ultimate liability on both bonds proved to be approximately $43,000, and since the liability of Maryland Casualty Company compared to that of National Surety Company was as one to three, the former should have paid $10,750 and the latter $32,250, so that to make the proper adjustment at this time Maryland Casualty Company, having paid a net amount of approximately $21,500,[3] should receive from National Surety Company $10,750; the right to recover that sum *in these proceedings* is the subject of the present controversy. National Surety Company does not deny that Maryland Casualty Company is entitled to recover the amount it claims, but insists that such recovery cannot be effected under and by virtue of the claim of the Clerk but only as a direct claim of its own for contribution; if the latter course had to be pursued the claim would be paid only to the extent of 50%, that being the extent of the dividends declared in the liquidation proceedings of National Surety Company, and indeed would probably be barred altogether because not filed within the time prescribed for the presentation of claims.

The first question that arises is whether the claim of the Clerk (leaving out of consideration for the moment any alleged rights therein of Maryland Casualty Company) was allowable in the amount of $75,000 or

---

[3] In connection with the final dividend paid to the Clerk by the Receiver of the bank, amounting to $6,900, there has been litigation in the United States District Court as a result of which that amount was divided equally between Maryland Casualty Company and National Surety Company. Maryland Casualty Company has appealed to the Circuit Court of Appeals, seeking to recover the other half of the dividend. If it succeeds in its appeal and receives the remaining $3,450 its claim in the present proceedings will be reduced to approximately $7,300.

only to the extent of the net amount due on National Surety Company's bond after receipt by the Clerk of the dividends from the Receiver of the bank. This question has been frequently considered both by our own courts and the Federal courts and the principle definitely established that when a receiver is appointed for an insolvent corporation the rights of creditors are fixed by the facts as they then exist; the creditors immediately become equitable owners pro rata of the insolvent estate, and from this it follows that if payments are received thereafter by a creditor from other sources to which he may have recourse, as for example, from a principal for whom the insolvent was a surety, nevertheless dividends are payable from the insolvent estate upon the basis of the claim as it existed when the receiver was appointed and without regard to such subsequent reductions, provided always, of course, that the creditor shall not receive more than the total amount of his claim.[4] *Miller's Appeal,* 35 Pa. 481; *Brough's Estate,* 71 Pa. 460; *Miller's Estate,* 82 Pa. 113; *Blum Brothers v. Girard National Bank,* 248 Pa. 148, 156, 157, 93 A. 940, 943; *Chambersburg Trust Co. v. Alexander,* 102 Pa. Superior Ct. 158, 161, 162, 156 A. 615, 616; *Gorman v. Wright,* 136 Fed. 164; *Board of Commissioners of Shawnee County, Kan. v. Hurley,* 169 Fed. 92; *Commercial & Savings Bank v. Robert H. Jenks Lumber Co.,* 194 Fed. 739; *Young v. Gordon,* 219 Fed. 168; *In re United Cigar Stores Co. of*

---

[4] This principle is not to be confused with the rule governing distribution in bankruptcy and now applicable in all equity proceedings *(United Security Trust Co. Case,* 321 Pa. 276, 184 A. 106) that a secured creditor, in presenting his claim, must first deduct the value of his collateral or the proceeds realized therefrom. A creditor is not considered "secured" within the meaning of that rule when the collateral held by him was not owned by the insolvent but was derived from some other source: *Emlen's Estate,* 333 Pa. 238, 4 A. 2d 143; *Gorman v. Wright,* 136 Fed. 164; *Young v. Gordon,* 219 Fed. 168; *Hampel v. Minkwitz,* 18 Fed. 2d 3; *In re United Cigar Stores Co. of America,* 73 Fed. 2d 296. In the present instance the claimant was not secured in respect of his claim against National Surety Company.

*America,* 73 Fed. 2d 296. The same principle prevails in New York: *In re Consolidated Indemnity & Insurance Co.,* 255 App. Div. 501, 8 N. Y. S. 2d 217, affirmed 281 N. Y. 680, 23 N. E. 2d 14. Not only may the creditor file for the amount of his entire claim against the insolvent as it stood at the inception of the receivership, but a surety of the insolvent who has paid the claim in whole or in part and is therefore subrogated to the right of the creditor to dividends from the principal's insolvent estate is likewise entitled to such dividends, calculated, not upon the basis of what the surety paid, but upon the amount of the original claim; the creditor in such a case claims and proves as trustee pro tanto for the surety: *American Surety Co. of New York v. Bethlehem National Bank,* 314 U. S. 314.[5]

The next question, and the principal one here contested, is whether, it being thus established that dividends were properly recoverable on the full amount of the Clerk's claim of $75,000 and that Maryland Casualty Company overpaid on its bond a sum now determined to be $10,750, can the latter amount be recovered by Maryland Casualty Company as use-claimant in these proceedings? Or, stating it differently, would payments of dividends by the Liquidator on the $75,000 claim properly cease when the Clerk received sufficient, together with the $25,000 from Maryland Casualty Company and the dividends from the Receiver of the bank, to make up the $100,000 of deposits, or would such dividends be payable until Maryland Casualty Company also received the sum which it overpaid in relief of National

---

[5] That the Clerk's claim was entitled to dividends based on the full amount of the bond was apparently conceded by National Surety Company because it paid on the claim $25,000, which was substantially more than the claimant would have received if limited to dividends on the net amount of the claim after giving credit for the dividends theretofore paid by the Receiver of the bank. That net amount would have been, as against National Surety Company, three-fourths of $50,000, or $37,500, on which the claimant would have been entitled to dividends amounting only to $18,750.

Surety Company? In the former event there would be payable on the claim $25,000, which was the amount in fact paid by the Liquidator, whereas in the latter event there would be payable the further sum of $10,750 to the use-claimant through the legal claimant. Maryland Casualty Company insists that it should be allowed to claim here through its right of subrogation; National Surety Company contends that there is permissible only an independent claim by Maryland Casualty Company for contribution.

To the problem thus presented the authorities give a clear answer.

In *Hess's Estate,* 69 Pa. 272, there were two co-sureties for a principal who made an assignment for the benefit of his creditors; one of the sureties subsequently died insolvent; the other, having paid the principal's obligations, claimed and was allowed to recover a dividend from the estate of the deceased surety upon the entire amount of the obligations thus paid. The court said (p. 275) : "In America, and certainly in Pennsylvania, a surety paying the debt of his principal *is entitled to be subrogated to all the rights and remedies of the creditors as against his co-sureties in precisely the same manner as against the principal debtor* and as substituted in the place of the creditor, and entitled to enforce all his liens, priorities and means of payment. . . . The debts paid by Christian Lintner and transferred to him stand exactly in the same position to the assets of the decedent, Henry Hess, as if presented by the creditors themselves, their status being fixed by his death, and nothing having occurred to change or reduce the amount. So far as they existed as debts payable out of the estate, no part of them is paid or extinguished, for the effect of subrogation is to consider them in full life, and enjoying all the rights of the original creditors."

In *Wright v. Grover & Baker S. M. Co.,* 82 Pa. 80, it was held that one co-surety, having paid the whole obligation, may cause judgment to be entered upon it in the

name of the legal plaintiff to his use and have execution thereon against the other co-surety for his proportion. The court said (pp. 82, 83) : "It is contended . . . that the rule of subrogation or contribution applies as between surety and principal debtor only, and not as between co-sureties . . . but it was held by Chief Justice MARSHALL [6] that the representatives of the surety who had overpaid were entitled to rank according to the dignity of the claims on which such excess was paid; *that the principle of substitution applied equally to cases arising between co-sureties as to those between a surety and his principal* . . . An actual assignment is unnecessary. . . . The right of substitution being shown and the surety having paid the debt, he succeeds by operation of law to the rights of the creditor."

In *Baily's Estate,* 156 Pa. 634, 27 A. 560, it was said (pp. 640-642, A. p. 562) : "Richard B. Baily and Francis Worth were co-sureties jointly and severally liable for the default of their principal, and in their relation to each other each was a principal for one half the amount recoverable for such default, and a surety for one half of it. If either was compelled to pay the whole amount, his rights and remedies against his co-surety for the half were the same as against their principal for the whole. . . . If their principal fails to pay his debt and the co-sureties pay it in equal proportions, he becomes their debtor and their liabilities to each other as such are discharged, but if one of them is compelled to pay the whole debt he is entitled to contribution from his co-surety, and may enforce it by an action of assumpsit, *or by subrogation to the rights of the creditor."*

In *Estate of James Cooper, Deceased,* 4 Pa. Superior Ct. 615, it was held that where one of three co-sureties has paid the debt of their principal he is entitled to a dividend upon the full amount of the debt out of the in-

---

[6] *In Lidderdale's Executors v. Executor of Robinson,* 15 Fed. Cas. 502, affirmed by the United States Supreme Court in 12 Wheat. 594.

solvent estate of another of the co-sureties up to the extent of one third of what he paid (it not appearing that the third co-surety was insolvent). The court said that there could be no doubt that if the creditor were pursuing the insolvent estate of the co-surety the claimant could prove the claim for, and be entitled to a dividend upon, the whole amount due, and therefore the surety who paid the claim was *entitled by subrogation to exactly the same rights as the creditor would have been allowed to exercise.*

*In re Thompson,* 300 Fed. 215, a case in the United States District Court for the Western District of Pennsylvania, it was held that one of several co-sureties who has paid the whole debt succeeds to all rights of the creditor whose claim he paid, including the right to receive dividends from the estate of an insolvent co-surety on the whole debt, not exceeding in the aggregate the amount for which the insolvent co-surety was legally liable as between himself and the solvent co-sureties. The court said that the paying surety stood precisely in the shoes of the creditor whose claim he paid and *was therefore entitled by subrogation to the dividends to which such creditor would have been entitled, on the whole claim, as against the insolvent surety.*

Section 141, Restatement of the Law of Security, states that "Where the duty of the principal to the creditor is fully satisfied, the surety to the extent that he has contributed to this satisfaction is *subrogated* (a) to the rights of the creditor against the principal, and . . . (d) *to the rights of the creditor against co-sureties . . . ,* but in such case the co-surety's personal liability is limited to the amount which will satisfy his duty to contribute his share of the principal's default." Section 162 states that "Where a co-surety has satisfied a claim of a creditor against a bankrupt co-surety, *he is entitled by subrogation to the benefit of the claim* if it is filed, or to file the claim if unfiled, but his dividends are limited to the amount due him by way of contribution." In the

comment to this section it is said that "Since the creditor, had he not been paid, could have filed or maintained a claim for the entire amount due from the co-surety, the other creditors of the bankrupt co-surety are in no worse position because this right is asserted by a co-surety." [7]

Maryland Casualty Company did not pay its $25,000 as a volunteer, but in performance of the obligation of its bond. It was required to pay a debt part of which, in equity and good conscience, was payable by National Surety Company. The right of subrogation is not lost because the debt of the principal is satisfied or extinguished by the surety's payment; on the contrary, it is just because of such satisfaction or extinguishment that the right of subrogation arises. When a surety pays the debt of a principal it is just as if the surety had purchased the claim; the payment operates as an assignment of the debt pro tanto and of all rights of the creditor with regard thereto, including, as the authorities thus indicate, the right to proceed in the name of the creditor against a co-surety liable for the same debt. The assignment executed by the Clerk and the Amicus Curiæ to Maryland Casualty Company added nothing to the latter's rights; these arose from equitable principles of subrogation which required no formal assignment either to create or to evidence them. In short, it is established that a surety may, at its election, work out its right of contribution against a co-surety not only through the medium of an independent and direct claim, but by way of subrogation to the rights of the creditor whose claim it has paid. The contention of National Surety Company must rest for its support upon the time element, which is a purely adventitious factor; thus, if Maryland Casualty Company had deferred its payment until after the claim of the Clerk had been presented in

---

[7] The illustrations given in connection with this comment are particularly illuminating, the second being practically identical with the facts in the present case.

the liquidation proceedings of National Surety Company, dividends would undoubtedly have been recoverable to the full extent of the claim on the bond, namely, three-fourths of the loss after deduction of the dividends received from the bank, and then Maryland Casualty Company would have been obliged to pay only the remaining one-fourth of such loss; certainly the amount payable by each surety should not be made to depend on which paid first, nor should the one so paying be penalized for meeting its obligation with the greater promptitude.

We are of opinion, therefore, that the $25,000 paid by the Liquidator to the Clerk did not satisfy the claim, but that there should have been paid thereon the same 50% dividends as other creditors received, calculated on the full amount of $75,000 and continuing until such dividends amounted to three fourths of the amount of the bankruptcy deposits as reduced by the dividends paid by the Receiver of the bank. We are also of opinion that interest should be allowed on the dividends from the respective times they were paid to other creditors of National Surety Company but withheld on the present claim, with an appropriate credit, of course, for interest on the $25,000 which was paid: *People v. E. Remington & Sons,* 12 N. Y. S. 829, affirmed 126 N. Y. 679, 28 N. E. 249; *In re Carnegie Trust Company,* 161 App. Div. 280, 284, 146 N. Y. S. 809, 812, 813; *Armstrong v. American Exchange National Bank of Chicago,* 133 U. S. 433, 470; 32 C. J. 897, Sec. 203.

Two concluding observations are in order. The one is that, since there is no evidence on the record to the contrary, the law of New York is presumably in accord with that of Pennsylvania as herein discussed. The other is that the present claim comes within the scope of the agreement between the New York Liquidator and the Pennsylvania Ancillary Receiver; the fact that part of it is due to a use-claimant by way of subrogation does not affect the situation in that regard. It is at least

doubtful whether the Pennsylvania courts would not have had the right to adjudicate this claim even in the absence of such an agreement; in any event the Liquidator, by contesting the claim on its merits, submitted himself to the jurisdiction of the Dauphin County Court and thereby made the result binding upon himself, not only in Pennsylvania, but, under the full faith and credit clause of the Constitution, in New York as well. Maryland Casualty Company, having the equitable right to work out its claim through the medium of subrogation to the rights of the Clerk, could exercise that right only in the jurisdiction where the claim of the Pennsylvania claimant was presented; to hold otherwise would be to make its right of subrogation abortive.

The order is reversed and the record remitted for further proceedings in accordance with this opinion; costs to be paid by defendant.