546 A.2d 62

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PITTSTON now known as Franklin First Federal Savings and Loan Association of Wilkes–Barre, Appellee,**

v.

**Anthony REGGIE and Jennie Rose Reggie, His Wife, Appellants.**

Superior Court of Pennsylvania.

Argued March 2, 1988.

Filed June 27, 1988.

Reargument Denied Aug. 26, 1988.

Andrew J. Primerano, Bloomsbury, for appellants.

David B. Hiscox, Wilkes–Barre, for appellee.

Before BROSKY, BECK and CERCONE, JJ.

BECK, Judge:

In this case we decide under what circumstances sureties may be discharged from their obligation to a creditor where the sureties allege the creditor has impaired the collateral of the sureties.

The underlying action in this case is one of foreclosure, based on a mortgage made by the appellants, Anthony Reggie and his wife Jennie Rose ("the Reggies"), in favor of appellee bank dated January 17, 1980. The Reggies claimed below that the mortgage is unenforceable in Pennsylvania since it was induced by fraud and/or misrepresentation and was not supported by consideration. This mortgage was part of a refinancing of an alleged deficiency which resulted from a foreclosure of a related property.

Central to the determination of the validity of the mortgage in this complex case is the question of whether the bank had an obligation to apply the proceeds of the related foreclosure sale in a certain order to the liens on that property. The trial court granted summary judgment to the bank, finding that the bank had no duty to apply the proceeds of the related foreclosure in such a way as to avoid foreclosing on the Reggies' home. We find that the trial court erred in granting summary judgment to the bank, and remand this case for proceedings consistent with this opinion.

The facts of the case are complex and lengthy. Three properties are involved: 1) 16 Johnson Street ("the Reggies' home"), which is the residence of the Reggies; 2) 326 Spring Street ("Spring Street property"); and, 3) 620 Luzerne Avenue ("Luzerne Avenue property"). In 1973, the son and daughter-in-law of the Reggies, along with the Reggies, allegedly executed a bond [1] and mortgage in favor of the bank for the amount of twenty-one thousand dollars ($21,000.00) ("Spring Street mortgage"). As admitted by the bank, the purpose of this mortgage and loan was to

---

1. Although the bank has alleged that bonds accompanied each of the mortgages involved in this case, those bonds were never entered into the record.

enable the son and daughter-in-law to purchase and make improvements to the Spring Street property. This mortgage constituted a first lien against the Spring Street property. The bank required additional collateral, however, so the Reggies pledged their home as collateral. This pledge became a third lien on the Reggies' home. In 1974, the son and daughter-in-law purchased the Luzerne Avenue property for twelve thousand dollars ($12,000.00). Again, the Reggies, with their son and daughter-in-law, executed a mortgage, this time as security for a debt of twenty thousand dollars ($20,000.00) (the increase over the purchase price amounted to a loan for improvements). This mortgage became a first lien on the Luzerne Avenue property and a fourth lien on the Reggie home, which the Reggies once again pledged as collateral.

In 1975, this mortgage on the Luzerne Avenue property was refinanced by the son and daughter-in-law, who executed a bond and mortgage in their names only. As a result, the 1974 Luzerne Avenue mortgage was marked "satisfied" by the bank. The mortgage executed as part of the refinancing ("the 1975 mortgage") became a first lien against the Luzerne Avenue property and a second lien on the Spring Street property. The amount refinanced was thirty-one thousand dollars ($31,000.00).

In 1978, the bank commenced an action in mortgage foreclosure against the son and daughter-in-law based upon the 1975 mortgage. Judgment in the amount of thirty-five thousand forty dollars and eighty-two cents ($35,040.82) was awarded to the bank. At a subsequent sheriff's sale, the bank bought both the Spring Street and Luzerne Avenue properties. The bank alleges that the total indebtedness secured by the 1975 mortgage and the Spring Street mortgage was fifty-eight thousand three hundred seventy-seven dollars ($58,377.00). The bank then sold the Spring Street property for twenty-nine thousand nine hundred dollars ($29,900.00) and the Luzerne Avenue property for eighteen thousand dollars ($18,000.00).

Instead of applying the proceeds of the sale of the Spring Street property to the first lien on that property (which was the mortgage that the Reggies signed as sureties), the bank deducted these amounts from the *combined* indebtedness on the two mortgages and alleged a deficiency of twelve thousand six hundred eighty two dollars and eighty six cents ($12,682.86). The effect of this maneuver was to satisfy the Luzerne Avenue debt first out of the proceeds of the Spring Street sale, i.e., the 1975 mortgage on the Luzerne Avenue property was satisfied. This included satisfying the second lien on the Spring Street property which was created pursuant to the 1975 mortgage on the Luzerne Avenue property. Thus the bank left intact the first lien of the mortgage on the Spring Street property on which the Reggies were sureties, exposing the Reggies' Johnson Street property to foreclosure for the unpaid debt on the original Spring Street mortgage. The bank claimed that the lien placed on the Reggies' home pursuant to the Spring Street mortgage was not affected by these foreclosures and sales and threatened to satisfy the deficiency by foreclosing on the Reggies' home.

In 1980, rather than lose their home, the Johnson Street property, the Reggies executed a mortgage in the amount of thirteen thousand dollars ($13,000.00) to refinance the deficiency and to forestall foreclosure. It is this mortgage which is the subject of the instant foreclosure action.

The Reggies contended below and on appeal that the bank had an obligation to the Reggies to apply the proceeds of the sale of the Spring Street property initially to the first lien on the Spring Street property. This first lien was created by the 1973 mortgage which also placed a third lien on the Reggies' home. This obligation arose in part, according to the Reggies', because the Reggies were sureties, with the bank's knowledge, to the Spring Street transaction. The Reggies contend that the bank was under a duty towards them as sureties not to impair the underlying collateral. The bank violated this duty when it chose to apply the proceeds of the sale of the Spring Street property

to the *second* lien on the property, instead of the first lien. (The source of the second lien was the 1975 Luzerne Avenue property mortgage. The first lien was the original 1973 mortgage on the Spring Street property which the Reggies signed as sureties.) This impairment of the collateral discharged the lien on the Reggies' home. Since the Reggies then owed no debt to the bank for the deficiency, consideration was lacking for the 1980 mortgage which refinanced the deficiency judgment. Moreover, the Reggies raised claims of misrepresentation and fraud below. The trial court refused to consider the issues of fraud and misrepresentation raised in the Reggies' counter-motion for summary judgment, claiming that the parol evidence rule precluded consideration of any evidence on these issues.

Rather, the trial court accepted the bank's argument that the bank's allocation of the proceeds of the Spring Street sale was proper. The trial court failed to impose upon the bank any duty toward the Reggies as sureties. Instead, the court held that the first lien on the Spring Street property survived the sheriff's sale. When the bank acquired legal title to the property at the sheriff's sale, that lien merged with the bank's title. According to the court and the bank, the lien on the Reggies' home was not affected. The bank could chose to apply the proceeds of the subsequent sale of the property to the junior lien and to then seek satisfaction on the senior lien by foreclosing on the Reggies' home.

However, under the undisputed facts as found by the trial court and as admitted by the bank, the Reggies entered the Spring Street transaction in the role of sureties. On appeal, the bank argues that the Reggies signed the mortgage simply as co-makers, and that the Reggies therefore were jointly and severally liable. However, in the bank's reply to new matter and interrogatory answers, the bank admits that the purpose of the loan was to enable the Reggies' son and daughter-in-law to purchase the property. The bank also admits that the Reggies allowed the lien to be placed on their home in order to provide additional collateral so that the son could purchase the property. The trial court

found that the Reggies pledged their home and signed the bond for the purpose of enabling the son to obtain the loan and that the Reggies' obligations would arise in the event of a default by the son. It was also undisputed below that the son and daughter-in-law, not the Reggies, received the proceeds of the loan and purchased the Spring Street Property alone. *See First National Bank and Trust Company v. Stolar,* 130 Pa.Super. 480, 197 A. 499 (1938) (sufficient evidence of suretyship found where party signed note to enable other party to obtain loan, first party received none of the loan proceeds, and bank knew of relationship between the parties.)

The bank's argument that the mortgage on its face does not reveal the Reggies' suretyship is meritless. The surety need not designate his or her status on the face of the instrument. Rather, a person can be found to be a surety even if he or she signed the instrument as a co-maker agreeing to be jointly and severally bound. *Philadelphia Bond and Mortgage Co. v. Highland Crest Homes,* 235 Pa.Super. at 252, 340 A.2d 476 at 479. Parol evidence is admissible to establish that a maker signed as a surety. *Philadelphia Bond and Mortgage Company v. Highland Crest Homes, Inc.,* 221 Pa.Super. 89, 288 A.2d 916 (1972); *Stolar,* 130 Pa.Super. at 486, 197 A. at 502. The bank, after admitting below that the Reggies lent their name and collateral to their son to enable the son to obtain a loan and purchase a house, cannot now argue on appeal that the Reggies signed as co-makers only.

Since the Reggies were sureties with the bank's knowledge, certain duties were imposed upon the bank with respect to the Reggies. *Stolar,* 130 Pa.Super. at 485, 197 A. at 501. The well-settled rule is that, if a creditor surrenders or impairs collateral which serves as security for the principal's debt, the surety is discharged from his obligation to the extent that the collateral would have produced sufficient funds to pay the debt in whole or in part. *Keystone Bank v. Flooring Specialists, Inc.,* 513 Pa.

103, 114, 518 A.2d 1179, 1185 (1986).[2] By applying the proceeds of the sale of the Spring Street property to another unrelated loan in which the Reggies had no part, the bank improperly subordinated the senior lien (which was concomitant to the lien on the Reggies home) to the junior one. The collateral was impaired in the sense that the risk which the Reggies agreed to assume when they became sureties was substantially increased by the bank's actions. The Reggies rightfully expected that the mortgage instrument which they signed as sureties constituted a senior mortgage on the Spring Street property and that the senior lien would be satisfied before foreclosure could begin on their home.[3] *Stolar*, 130 Pa.Super. 480, 197 A. 499 (action of bank in subordinating prior lien without consent of surety released and discharged surety).

**2.** The bank confuses the issues throughout this case by at times referring to a mortgage and bond under which they seek to hold the Reggies liable, but at other times referring only to a mortgage. As noted above, the bank never entered into the record any notes or bonds signed by the Reggies. Even if the bank attempts to hold the Reggies personally responsible on the note, the same grounds for discharge apply. The Uniform Commercial Code as enacted in Pennsylvania codifies the common law grounds for discharge of a surety in relation to commercial paper. 13 Pa.Cons.Stat.Ann. § 3606 (Purdon 1984).

**3.** As the bank notes, the lien of a prior mortgage is not discharged by a judicial sale on a junior lien. *Liss v. Medary Homes, Inc.*, 388 Pa. 139, 130 A.2d 137 (1957); 42 Pa.Cons.Stat.Ann. § 8152(a) (Purdon 1982). The bank further admits that the senior lien on the Spring Street property survived the sheriff's sale. However, the bank then claims that the doctrine of merger operated to extinguish the lien by combining both legal and equitable title. *See, e.g., Kretschman v. Stoll*, 328 Pa.Super. 51, 352 A.2d 439 (1975). This argument fails when sureties are involved, because the bank chose to merge the senior lien, rather than the junior lien, when it decided to foreclose on the junior lien first. The bank still acted to impair the collateral. We note that had there been another creditor holding one of the liens, instead of the bank being sole lienholder, the Reggies' interests would have been safeguarded. Under the case law and statute cited, the senior mortgage would have had priority in receiving the proceeds or would have survived any sale. Although the bank as sole creditor can waive the protections offered by the statute governing priority of liens, *Dauphin Deposit Bank and Trust Co. v. Stouffer, Inc.*, 285 Pa.Super. 106, 426 A.2d 1164 (1981), it cannot maneuver its waiver to violate its duties to a surety involved.

In addition, by paying off the junior lien, which related to a transaction to which the Reggies were not a party, the bank extended the Reggies' liability to an unrelated loan. To sanction the actions of the bank in this case would be to extend the liability of the surety in one transaction to any number of subsequent transactions. The principal borrower would need only to pledge as collateral in subsequent obligations the property subject to a mortgage to which a surety is a party.

■ Thus, the bank, having violated its duties toward the Reggies, discharged them, as sureties, from liability on the Spring Street mortgage. The Reggies owed no debt to the bank after the sales of the Spring Street property. The bank could not have legally foreclosed on the Reggies' home. Therefore, there was no consideration underlying the 1980 mortgage which is the subject of the present action. The Reggies were induced to finance a non-existent debt. The bank was not entitled to a summary judgment below. To the contrary, as a matter of law, the mortgage on which the bank seeks to foreclose is unenforceable for lack of consideration.

The bank, for the first time on appeal, attempts to salvage the enforceability of the mortgage from this alleged lack of consideration by invoking the application of the Uniform Written Obligations Act, 33 Pa.Cons.Stat.Ann. § 6 (Purdon 1967). The Act provides "that a written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 Pa.Cons.Stat.Ann. § 6. However, the bank has altogether failed to specify the language in the mortgage which allegedly qualifies as a substitute for consideration under the Uniform Written Obligations Act. The trial court made no finding as to the whether the mortgage in fact contained the appropriate language to render it enforceable under the Act. Thus,

since the bank has failed to support its allegations, we cannot hold this mortgage enforceable under the Act.

■ However, even if the mortgage were found enforceable notwithstanding the lack of consideration, the bank would not be entitled to summary judgment. The Reggies alleged that they were induced into signing the mortgage because of fraud and misrepresentations on the part of the bank. They allege that the bank misrepresented to them that they owed the pre-existing debt to the bank and that the bank could have foreclosed on their home. The Uniform Written Obligations Act would merely save the mortgage from unenforceability due to lack of consideration; it does not prevent an attack on the mortgage on the basis of fraud or material misrepresentation.

■ The recipient of misrepresentation may avoid a contract by showing that the misrepresentation was material. *Germantown Manufacturing Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138 (1985); *Gilmore v. Northeast Dodge Co.*, 278 Pa.Super. 209, 420 A.2d 504 (1980) (recission may be imposed if party induced to enter a contract by material misrepresentation). The factual issue of material misrepresentation remains to be resolved. Likewise, whether fraud has been committed by the bank is a question of fact. *Greenwood v. Kadoich*, 239 Pa.Super. 372, 357 A.2d 604 (1976).[4] Again, the existence of such disputed issues of

4. The trial court relied upon *Sokoloff v. Strick*, 404 Pa. 343, 172 A.2d 302 (1961), to exclude consideration of parole evidence of fraud. In *Sokoloff*, the Supreme Court of Pennsylvania held that where a written contract purports to cover the entire agreement of the parties, alleged oral representations are merged into or superseded by the subsequent written contract. The Court in *Sokoloff* ruled inadmissible evidence showing that the plaintiffs were told by the defendant when they signed the note and mortgage that the defendant would never proceed to recover under those instruments. The Court went on to say that a promise not to enforce an instrument in the future does not amount to the type of fraud that would void that instrument. However, *Sokoloff* is inapposite to the type of fraud and misrepresentation which the Reggies are attempting to prove. The Reggies claim in their pleadings, not just that the bank violated its promise to use the proceeds from the sale of the Spring Street property to satisfy the senior lien, but that the bank misrepresented to them that they owed the bank a debt. Evidence of such misrepresentation and fraud is

fact should have precluded the grant of summary judgment to the bank.

Therefore, we vacate the order of the trial court granting summary judgment to the bank and remand this case to the trial court for proceedings consistent with this opinion.

admissible to void the mortgage. *Gilmore; Germantown Manufacturing Co.; Greenwood.*