In re Robert BAHARA and Elaine Bahara, Debtors.

In re Eugene BRIZER and Roberta Brizer, Debtors.

Bankruptcy Nos. 5–92–01083, 5–92–01082.

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 12, 1995.

Stephen Bresset, Honesdale, PA, for debtors.

George Clark, Scranton, PA, for First Nat'l Bank of Jermyn.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Under consideration in this Chapter 11 case is a Motion to Convert the case to Chapter 7, an Objection to Brizers' and Baharas' (hereinafter "Debtors") amended plan filed by The First National Bank of Jermyn (hereinafter "FNBJ") and FNBJ's Motion for Relief from the Automatic Stay. An Objection to FNBJ's Proof of Claim was filed by the Debtors.

The pertinent facts are as follows: the male Debtors, along with Edward Kubecki (hereinafter "Kubecki") are principals of the partnership known as M. Brizer & Co., (hereinafter "Brizer & Co."), a meat processing business located in Jermyn, Lackawanna County, PA., which ceased operations in 1988. The principals of Brizer & Co. hold title to the real estate and all equipment contained therein.

In November of 1979, FNBJ extended a $650,000.00 loan to the Wilkes–Barre Industrial Development Authority (hereinafter "1979 loan") for the purpose of financing the acquisition of a commercial building and equipment for the use of Brizer & Co. That company was the beneficiary of the loan which was secured by a mortgage on the commercial property. The Debtors and Kubecki and his spouse, Stella, personally guaranteed the loan with a bond guaranty. The language of the bond guaranty states that the guarantor agrees that their liability as "Guarantor shall not be impaired or affected by any renewal or extension which may be made with or without their knowledge or consent ..." (See Plaintiff's Exhibit No. 1 ). Monthly repayment of that loan in the amount of $6,200.00 per month was made until September of 1987.

A second loan was made with FNBJ in May of 1987 for $200,000.00. This loan was secured by the personal residences of the Debtors, Kubecki and his spouse, and two Kubecki children and their spouses as co-promisors (not co-guarantors or co-sureties) to be held jointly and severally liable for the

debt.[1] (*See Plaintiff's Exhibit No. 4*). By virtue of written appraisals submitted without objection, the Brizer residence is found valued at $138,500.00 and the Bahara residence is found valued at $148,000.00. An additional, unsecured third loan for $200,000.00 was obtained by Brizer & Co. in June of 1987. This loan was later released and/or stricken from the record by FNBJ. (*Transcript dated June 15, 1994 at pp. 8 and 10.*) On appeal, the Pennsylvania Supreme Court affirmed the validity of the judgments on the 1979 and the May 1987 obligations.

On June 16, 1992, Edward and Stella Kubecki executed a loan modification agreement with FNBJ. This agreement released Kubecki, his spouse, his children and their spouses from all prior obligations to FNBJ in exchange for a $6,000.00 down payment and a $127,000.00 promissory note accompanied by a first lien mortgage on the Edward and Stella Kubecki residence. The mortgaged residence used as security for this note was the same collateral that Edward and Stella Kubecki used to secure the May 1987 loan. This agreement failed to reserve FNBJ's rights of recourse against the Debtors, although an amended agreement executed September 2nd of that year attempted to reserve those rights. The Debtors were offered a similar loan modification agreement by FNBJ, but found the terms unacceptable and refused the offer. The Kubecki loan modification agreement was negotiated without the consent of the Debtors.

A dispute has arisen concerning the value of the commercial property securing the 1979 loan. The parties have submitted appraisals that demonstrate a substantial dispute with FNBJ as to value. The Debtors' appraiser submitted a fair market value of $560,000.00 for the commercial property. FNBJ's appraiser valued the property at $208,000.00, significantly as a result of the inclusion of potential costs for an environmental clean-up not addressed in the Debtors' appraisal.

An auction of machinery and equipment remaining on the premises of Brizer and Co. was held by FNBJ in November of 1993. The sale of these items yielded $34,079.00 which was applied to partial satisfaction of the Debtors' obligation to FNBJ. (*See Transcript dated March 15, 1994 at p. 9 and Plaintiff's Exhibit No. 11*). An additional $18,285.00 was credited to the Debtors' loan through rental payment on the commercial property paid directly to FNBJ.

■ The salient issue is whether a loan modification agreement signed by the Kubeckis, as co-guarantor and co-maker of the above mentioned loans, without the consent of the other co-guarantors and co-makers, releases the Debtors from their obligations under the loan agreements. The Debtors argue that the loan modification agreement with the Kubeckis altered the use of the Kubecki's residence as collateral, as well as the availability of the children's residences, for the May 1987 loan, thus the Debtors should be discharged of all prior and current obligations since this was done without their consent.

■ Before commencing our analysis, it is necessary to summarize some well established common law principles of surety and guaranty law. When there are several sureties for the principal's unpaid debt, each surety owes to his co-sureties a duty to pay his proportional share of their common debt. *Schnader v. National Surety Co.*, 349 Pa. 599, 37 A.2d 753 (1944). "Should one co-surety have to pay more than his proportional share of the debt, one of the rights incidental to his co-suretyship is the right to enforce contribution from the other sureties for his excess." *In re Bailey's Estate*, 156 Pa. 634, 27 A. 560 (1893).

The Debtors rely on *First Federal Savings and Loan Association of Pittston v. Reggie*, 376 Pa.Super. 346, 546 A.2d 62 (1988) to support their argument. The Reggies co-signed a loan to enable their son and his spouse to own a home. When the son de-

---

1.  Although the loan indicates that the parties are only jointly liable for the debt as indicated by the language "We promise to pay . . .", *13 Pa.C.S.A. § 3118(5)* states, "[U]nless the instrument otherwise specifies, two or more persons who sign as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such word as 'I promise to pay'."

faulted, the bank sold the son's property and applied the proceeds to satisfaction of a junior lien on the property instead of satisfying the senior lien co-signed by the Reggies. The *Reggie* court concluded that the bank selectively satisfied a junior lien on the mortgaged property which violated their duty to the surety on the first mortgage. The decision of the court to discharge the surety on the senior lien was its remedy for the violation of the bank's duty as a lender. In the case at bar, any release the bank gave to the Kubecki family has not been proven to have increased the exposure of the Debtors since no evidence has been offered as to value of the Kubecki family assets prior to the modification.

The Debtors also rely on *Federal Deposit Ins. Corporation v. Steinman*, 53 F.Supp. 644 (E.D.Pa.1943), to support their position. The court in *Federal Deposit* provided a complete discharge to the unreleased party in a mortgage loan where nearly all the property subject to the mortgage has been released to one of two mortgagors. The unreleased mortgagor was left with no collateral with which to secure his loan, thus increasing his risk of loss considerably. The court concluded that a mortgagee may not release any portion of the mortgaged land in a way that would destroy or impair its value as security for the debt, absent the consent of the mortgagor, without forfeiting its rights to seek a deficiency against the unreleased party. *Federal Deposit, supra* at 647. While the situation in *Federal Deposit* is analogous to the case at bar, *Federal Deposit* deals with mortgage law and not the law of principals and sureties applicable in the case before us. The Debtors are not co-mortgagors with the non-debtors on mortgages collateralized by the same property. Therefore, while this court agrees with the notions of equity espoused in *Federal Deposit,* it is not controlling.

Both parties rely on *Keystone Bank v. Flooring Specialists, Inc.,* 513 Pa. 103, 518 A.2d 1179 (1986) in advancing their position. In *Keystone,* the corporation signed various business loans evidenced by promissory notes personally guaranteed by the McCosbys and the DeRubeises. Not long after signing the notes, the corporation defaulted on the loans. Keystone obtained a judgment lien against the personal property of the co-guarantors. During revival proceedings of the judgment liens five years later, the bank released a portion of land owned by the McCosbys for $5,000.00 consideration, as well as releasing them from any further obligations under the terms of the previously signed promissory notes. This agreement was made without the consent of the DeRubeises. The Supreme Court remanded the case to the lower court to determine the extent, if any, that the rights of DeRubeises were impaired.

*Keystone* concludes that if the creditor releases collateral obtained from one of several co-sureties, such release can impair the other sureties' right to resort to such collateral to enforce their rights of contribution. If the release should have such an effect on the co-surety, the other co-surety will be entitled to a pro tanto discharge of their obligations. *Id.* 518 A.2d at 1186, *In re F.B.F. Industries, Inc.,* 165 B.R. 544, 552 (E.D.1994), *First Federal Savings and Loan Association of Pittston v. Reggie, supra* at 353, 546 A.2d at 65, *National Building and Savings Ass'n v. Fink,* 182 Pa. 52, 37 A. 1009 (1897).

The court in *Keystone* relied heavily on Williston's treatise on contracts to arrive at its conclusions:

> In the case of co-sureties, . . .
>
> [E]ach must be treated as between himself and his co-sureties as a principal for the fraction of the debt which he ought to pay and a surety for the remainder. . . .
>
> If the creditor by any dealings with the one co-surety impairs the suretyship rights of other co-sureties, they will be discharged from such proportion of the debt as they would equitably have been entitled, on payment of it, to throw upon the co-surety with whom the inequitable dealings have been had. *Keystone Bank v. Flooring Specialists, Inc., supra* at page 116, 518 A.2d at 1186.

FNBJ claims that the loan modification agreement is a first lien mortgage on the personal residence of the Kubeckis. However, the same residential property was also

used as collateral in the form of a short mortgage on the Kubecki residence for the May 1987 loan. The May 1987 loan had no consent provisions similar to those in the 1979 loan which served to provide advance consent to an agreement between co-guarantor and the bank.

The use of the same property as collateral for the May 1987 loan and the loan modification agreement, as well as the release of the children, suggests an impairment not only discussed by Williston, but referenced as a statutory defense pursuant to *13 Pa.C.S.A. § 3606* as follows:

§ 3606. Impairment of recourse or of collateral

**(a) General rule.**—The holder discharges any party to an instrument to the extent that without the consent of the parties, the holder:

(1) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person . . . ; or

(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

**(b) Express reservation of rights by holder.**—By express reservation of rights against a party with a right of recourse the holder preserves:

(1) all his rights against such party as of the time when the instrument was originally due;

(2) the right of the party to pay the instrument as of that time; and

(3) all rights of such party to recourse against others. *13 Pa.C.S.A. § 3606.*[2]

The words used in § 3606 "to the extent that . . ." indicate that the party seeking discharge would be entitled to a pro tanto discharge, but only to the extent that their rights have been impaired. *First Arlington National Bank v. Stathis,* 115 Ill.App.3d 403 at 414, 71 Ill.Dec. 145 at 153, 450 N.E.2d 833 at 841 (1983). The burden of proof is on the Debtors to show the degree to which the collateral or their rights of contribution have been impaired by the Kubecki loan modification agreement. *National Building & Savings Association v. Fink,* 182 Pa. 52 at 59, 37 A. 1009 at 1010 (1897), *Ramsey v. First Nat. Bank and Trust Co.,* 683 S.W.2d 947 at 954 (Ky.App.1984), *Bank of Ripley v. Sadler,* 671 S.W.2d 454 (Tenn.1984), *Peacock v. Farmers & Merchants Bank,* 454 So.2d 730 (Fla.App. 1984).[3]

The Restatement of Contracts guides the court on the manner in which to apply this statute in a situation dealing with co-promisors rather than co-sureties as exists regarding the May 1987 loan.

(1) Except as stated in § 295, where the obligee of promises of the same performance discharges one promisor by release . . .

(a) co-promisors who are bound only by a joint duty are discharged unless the discharged promisor is a surety for the co-promisor;

(b) co-promisors who are bound by joint and several duties or by several duties are not discharged except to the extent required by the law of suretyship. *Restatement of the Law of Contracts, Second, § 294 at p. 423.*

2. This statute has, since the institution of this suit, been repealed, but under *1 Pa.C.S.A. § 1976,* ". . . the repeal of any civil provisions of a statute shall not affect or impair . . . any civil action pending to enforce any right under the authority of the statute repealed. Such action may be proceeded with and concluded under the statutes in existence when such action was instituted." *13 Pa.C.S.A. § 3606* has now been incorporated in *13 Pa.C.S.A. § 3605.*

3. *13 Pa.C.S.A. § 3605* was not in effect at the inception of these proceedings, but is the current

law in Pennsylvania. Section 3605 serves to codify 3606 and the existing case law concerning this matter. Section (f) states ". . . the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay, taking into account rights of contribution, if impairment had not occurred. . . . The burden of proving impairment is on the party asserting discharge."

(1) Where the obligee of promises of the same performance contracts not to sue one promisor, the other promisors are not discharged except to the extent required by the law of suretyship. *Restatement of the Law of Contracts, Second, § 295(1) at p. 427.*

The lack of information concerning the worth of the Kubecki residence or their finances or their children's residences or finances gives the court no indication to what extent the Debtors have been damaged, their rights of contribution impaired or whether the Kubeckis could have satisfied all or part of the May 1987 loan. In short, the court has no idea if there actually was an impairment and, if so, the degree of that impairment.

The court concludes that since the Debtors have failed to meet their burden under Section 3606, the question of whether or not there was a reservation of rights under the language of the loan modification agreement and its amendment need not be addressed. The statute requires proof of impairment and that burden has not been carried. The Debtors would be responsible for the entire amount due on the May 1987 note.

Notwithstanding this conclusion, however, the proof of claim filed by FNBJ on September 10, 1992 only identified the 1979 loan and no other. When a claim is listed as disputed, as was done here, the failure to file a timely proof of claim results in a preclusion of the allowance of that claim.

Nevertheless, as stated in *In re Tarnow*, 749 F.2d 464, 465 (7th Cir.1984), when dealing with a lien on property, the law allows, "... a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt." This is true regardless of whether the secured creditor files a proof of claim. Therefore, regarding the May 1987 loan, the bank is secured to the extent of the combined worth of the Debtors' homes and no allowance for any unsecured portion can be permitted beyond that.

The 1979 loan was secured by the jointly owned commercial property with Brizer & Co. as the principal. The loan was further guaranteed by the Debtors and Edward and Stella Kubecki. While this agreement negotiated by the bank and Kubecki may result in an increased risk for the Debtors, the Debtors, in advance, have consented and agreed to not allow such an agreement to affect their obligation to the bank. FNBJ has the rights under the contract to sue the Debtors for the entire amount due on the 1979 loan regardless of whether FNBJ reserved their rights in the loan modification agreements.

The bank has received rental payments concerning the commercial property, only two-thirds of which were applied to the Debtors' account. The other one-third portion of the rental payment was credited to the Kubeckis pursuant to the 1992 agreement between FNBJ and the Kubeckis. A total of $18,285.00 has been credited to Brizer & Co. of a total $27,000.00 rents. The difference shall be credited back to the Debtors' account due to the stipulation of March 10, 1993, whereby both parties agreed that the full amount of the rent was to be paid directly to FNBJ and put towards the Debtors' account in partial payment of the debt owed.

The court finds that the principal balance on the November 1979 loan was $403,962.63. To this we have added interest to the filing date of $156,020.26 and costs of $165,955.73 in order to arrive at the total due of $725,938.62.

From this amount, credit should be given for the application of the proceeds of the personalty earlier identified. The testimony appeared to indicate that credit should be given for that reason in the amount of $34,079.00. Furthermore, we will give credit for the rent received from the commercial property of $27,000.00. These amounts reduce the net amount payable on the 1979 loan to $664,859.62.

FNBJ is secured under the 1979 loan up to the value of the commercial property less any prior liens. The court concludes that FNBJ's appraisal of $208,000.00 is more accurate because it takes into account a decrease in value due to water and ground soil contamination. Moreover, the Debtors' ap-

praisal inexplicably omitted the cost comparison approach, a significant element customarily factored into an equation that leads to the computation of a final fair market value estimate of the property. Furthermore, the Debtors' appraisal does not substantiate the $15,000.00 per acre figure it assigns to the excess land surrounding the subject building.

The building is also encumbered by a lien for unpaid taxes owed to the date of filing of $38,805.89. FNBJ's claim is therefore allowed as secured for $169,194.11 and unsecured for $495,665.51.

The court denies the Debtors' objection to FNBJ's proof of claim based on this reasoning.

▮ FNBJ's objection to the amended plan is sustained. The Debtors offer a cram down in their plan of reorganization through the sale of over-valued machinery, equipment and commercial real estate without addressing the disposition of the Debtors' homes should the collateral be insufficient to satisfy the loan. The plan makes no provisions for unsecured or undersecured debts. Nevertheless, the court will not preclude the Debtors from attempting to present a confirmable plan consistent with this opinion. We, therefore, will allow the Debtors thirty (30) days to file an amended plan and disclosure statement.

▮ Notwithstanding that conclusion, we are compelled to address the bank's Motion for Relief from the Automatic Stay with regard to their collateral.

Obviously, under no circumstances will the court find equity in the commercial real estate. Neither can we find the necessity of this property to an effective reorganization since its liquidation can only partially address the debt due the bank. With accruing interest and costs against the property, there can only be but one conclusion—that relief from the automatic stay should be granted immediately as to the commercial real estate.

▮ That conclusion may not necessarily be the same with regard to the residences of the Debtors. The bank has not filed a proof of claim with regard to those items of real estate. Conceivably, by offering the bank

the value of the secured claim i.e., the value of the real estate, the Debtors can salvage their residences. We shall await review of the amended plan before we consider favorably the Motion of the bank for relief from stay with regard to these parcels of real estate. Accordingly, the bank's Motion with regard to the two residences is denied without prejudice.

Consistent with this opinion, we further conclude that the Motion to Convert to Chapter 7 is granted only if an amended plan is not filed within thirty (30) days, otherwise, it is denied.